UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| MICHAEL FRUNGILLO, Plaintiff, v. IMPERIA ENTERTAINMENT, INC. (now VIRATECH CORP., a Nevada Corporation), et al., Defendants. | No. 2:14–mc–00047–KJM–CKD<br><br>ORDER |

This matter is before the court on the motion by defendant Viratech Corp., formerly known as Imperia Entertainment, Inc. (defendant) to dismiss the case for lack of personal jurisdiction. (ECF No. 24.) Plaintiff Michael Frungillo (plaintiff) opposes the motion. (ECF No. 27.) The motion was submitted without argument, and the court now DENIES it.

I. BACKGROUND

In early 2007, defendant Imperia solicited plaintiff to provide a $250,000 loan to facilitate financing of defendant's full-length feature film titled "Never Submit." (Minguet Decl. Ex. A, Pl.'s Second Am. Compl. ¶¶ 15, 19, ECF No. 27-1.) Plaintiff was a resident of New Jersey and negotiated the terms of a loan agreement with defendant Imperia's then-CEO Kenneth Eade. (Frungillo Decl. ¶¶ 1–2, ECF No. 28.) The loan agreement was sent to plaintiff in New Jersey, where he signed it and wired money from his New Jersey bank account to defendant

in California. (*Id.* ¶ 3.) The loan agreement provided that defendant Imperia would repay plaintiff the $250,000 loaned, plus $25,000 interest, by May 18, 2007. (*Id.* Ex. A at 1.) To date, defendant has not repaid any of the loan. (*Id.* ¶ 3.)

Plaintiff subsequently filed a civil action in the United States District Court for the District of New Jersey against defendant, alleging breach of contract and other related claims arising out of defendant's failure to repay the loan. (Pl.'s Second Am. Compl., ECF No. 27-1.) Despite being personally served, defendant did not respond, and the New Jersey District Court entered a default judgment against defendant in the amount of $381,442.88. (*Id.* Ex. B.) The default judgment included the $250,000 principal on the loan, $25,000 interest pursuant to the loan agreement, $63,589.04 in pre-judgment interest, and $42,853.84 in attorneys' fees and expenses. (*Id.*) The New Jersey District Court amended the judgment in November 2012 to include defendant Viratech as a judgment debtor. (*Id.* Ex. D.) The modification reflected defendant Imperia's name change from Imperia to Viratech in its Articles of Incorporation filed with the Nevada Secretary of State. (*Id.*)

On April 7, 2014, plaintiff registered his judgment against defendant in this court. (ECF No. 1.) By the instant motion, defendant now collaterally attacks the judgment by the instant motion. (ECF No. 24.) Plaintiff opposes the motion (ECF No. 27), and defendant has not replied.

## II. LEGAL STANDARD

Under Federal Rule of Civil Procedure 60(b)(4), the court "may relieve a party or its legal representative from a final judgment, order, or proceeding . . . if the judgment is void." As the Supreme Court has stated, "[a] defendant is always free to ignore the judicial proceedings, risk a default judgment, and then challenge that judgment on jurisdictional grounds in a collateral proceeding." *Ins. Corp. of Ireland v. Compagnie des Bauxites de Guinee*, 456 U.S. 694, 706, (1982). It is settled that a court of registration has jurisdiction to entertain motions challenging the underlying judgment. *See F.D.I.C. v. Aaronian*, 93 F.3d 636, 639 (9th Cir. 1996). Where the district court issuing the underlying judgment lacked personal jurisdiction over the defendant, the default judgment is void and must be vacated. *Walker & Zanger (W. Coast) Ltd. v. Stone Design*

*S.A.*, 4 F. Supp. 2d 931, 934 (C.D. Cal. 1997), *aff'd*, 142 F.3d 447 (9th Cir. 1998). No time limit applies to bringing a motion to vacate a judgment as void. *Id.*

III. DISCUSSION

The parties dispute whether defendant had sufficient contacts with New Jersey to allow the New Jersey District Court to exercise jurisdiction over defendant. (ECF Nos. 24 & 27.)

Federal Rule of Civil Procedure 4(k)(1)(A) provides that federal district courts have personal jurisdiction over non-resident defendants "who [are] subject to the jurisdiction of a court of general jurisdiction in the state where the district court is located." Federal courts follow state law in determining the bounds of their jurisdiction over persons. *Daimler AG v. Bauman*, ___ U.S. ___, 134 S. Ct. 746, 753 (2014). Accordingly, the court looks to New Jersey state law to determine the jurisdiction of the federal district court in New Jersey. New Jersey Court Rule 4:4–4 sets out the state's long-arm statute, and New Jersey courts have held the state's long-arm statue reaches "to the uttermost limits permitted by the United States Constitution." *Charles Gendler & Co. v. Telecom Equip. Corp.*, 102 N.J. 460, 469 (1986). Thus, the question of due process under the U.S. Constitution parallels the analysis of personal jurisdiction in New Jersey.

Federal due process requires some "minimum contacts" between the defendant and the relevant forum such that the court's exercise of personal jurisdiction "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe Co. v. Washington*, 326 U.S. 310, 316 (1945). The nature of a defendant's contacts must be such as to provide a defendant with fair warning that it could be "haled into court in the forum state." *World-Wide Volkswagen Corp. v. Woodson*, 444 U.S. 286, 297 (1980). The court may exercise either general or specific personal jurisdiction over a non-resident defendant. *See Helicopteros Nacionales de Colombia S.A. v. Hall*, 466 U.S. 408, 414 (1984). In the instant case, the parties agree that general jurisdiction is inapplicable because defendant is not a resident of and does not have a principal place of business in New Jersey. (*See* ECF Nos. 24 & 27.)

Specific jurisdiction is more limited and allows jurisdiction based only on matters related to the defendant's contacts with the forum state. *See Menken v. Emm*, 503 F.3d 1050, 1057 (9th Cir. 2007). Specific jurisdiction considers whether "defendant has purposefully

directed his activities at residents of the forum, and the litigation results from alleged injuries that arise out of or relate to those activities." *Burger King Corp. v. Rudzewicz*, 471 U.S. 462, 472 (1985) (internal quotations and citations omitted). Courts must examine the relationship among the defendant, the forum and the cause of action to determine whether the defendant had "fair warning" that it could be brought to suit there. *Shaffer v. Heitner*, 433 U.S. 186, 204 (1977). "The defendant need not have entered the forum state when it conducted these activities, but its forum-related conduct must form the basis of the alleged injuries and resulting litigation." *Osteotech, Inc. v. GenSci Regeneration Sciences*, 6 F. Supp. 2d 349, 354 (D.N.J. 1998) (citing *Helicopteros*, 466 U.S. at 408). Plaintiff has the burden of establishing personal jurisdiction but need only do so "with reasonable particularity." *Mellon Bank (East) PSFS Nat. Ass'n v. Farino*, 960 F.2d 1217, 1223 (3d Cir. 1992).

Here, because defendant took affirmative steps to reach out to plaintiff in New Jersey and solicit funds from New Jersey, the court finds the New Jersey District Court properly exercised personal jurisdiction over defendant. Specifically, plaintiff's complaint details how defendant reached out to plaintiff in New Jersey and solicited money from plaintiff to finance a film. (Pl.'s Second Am. Compl. ¶ 15, ECF No. 27-1.) Plaintiff, a New Jersey resident, signed a contract with defendant to loan defendant money for defendant's film and personally visited his bank in New Jersey to transfer the money to defendant. (*Id.* ¶¶ 17, 24.) When the initial wire transfer was unsuccessful, plaintiff received further instructions from defendant and wired the money telephonically from his New Jersey bank account. (*Id.* ¶¶ 25–28.) These actions collectively demonstrate that defendant "purposefully directed" its activities to plaintiff in New Jersey. *See Burger King Corp.*, 471 U.S. at 472. The underlying lawsuit relates to the contract and funds solicited by defendant from plaintiff in New Jersey. Therefore, defendant had the requisite "fair warning" that it could be brought before a court in New Jersey in a lawsuit related to the agreement. Exercising jurisdiction over defendant "does not offend traditional notions of fair play and substantial justice." *Int'l Shoe*, 326 U.S. at 316.

Kevin Buckman, Viratech's current CEO, asserts he is not aware of Viratech's having conducted any business in New Jersey. (Buckman Decl. ¶¶ 4–15, ECF No. 24-2.) But his

knowledge is inconsequential here. Viratech's predecessor in interest, Imperia, through its agents, reached out to New Jersey and signed a financing contract with a New Jersey resident to acquire money from a New Jersey bank. Buckman's lack of knowledge of this activity in 2007, while Viratech was named Imperia, does not alter the court's analysis.

In addition, the court is unpersuaded by defendant's citation to the recent Supreme Court decision in *Walden v. Fiore*, ___ U.S. ___, 134 S. Ct. 1115 (2014). In *Walden*, the plaintiffs were residents of Nevada and sought to have Nevada exercise personal jurisdiction over a police officer that had searched plaintiffs' luggage at an airport in Georgia. *Id.* at 1119. The officer searched the luggage in Georgia and forwarded an affidavit to a United States Attorney's Office in Georgia. *Id.* at 1119–20. Even though the officer may have directed his conduct at individuals he knew had Nevada connections and seized cash that originated and was later returned to Nevada, the officer never purposefully availed himself of that jurisdiction. *Id.* at 1124–26. *Walden* stands for the proposition that mere injury in the forum state is not a sufficient connection to establish minimum contacts. *Id.* at 1125.

In contrast, here, as explained above, there is more than mere injury to a New Jersey resident: Defendant Imperia affirmatively reached out to New Jersey to acquire money and negotiated a contract with plaintiff while plaintiff was in New Jersey.

Plaintiff's comparison to a New Jersey case, *Halak v. Scovil*, 296 N.J. Super. 363, 370 (App. Div. 1997), is much more apt. In *Halak*, the New Jersey plaintiff entered into a contract with a Maryland charter boat company. *Id.* at 366. The Maryland company negotiated the contract over the phone with a New Jersey resident, sent the contract to New Jersey where the plaintiff signed it, and the money was transferred from a New Jersey bank. *Id.* at 369. There were also additional contacts where the charter boat company obtained an arrest warrant against plaintiff and informed other boat companies in Maryland about the warrant. *Id.* The court held that because defendant's purposeful conduct arose out of a business relationship and not the unilateral activities of the plaintiff, the defendant "should reasonably anticipate being sued in New Jersey." *Id.* at 370 (citing *World–Wide Volkswagen*, 444 U.S. at 297–98).

/////

Here, plaintiff's case for minimum contacts is even stronger than the plaintiff's in *Halak* because not only is there a business relationship with a New Jersey resident, but defendant actually visited plaintiff in New Jersey to negotiate the terms of the loan. Plaintiff's complaint explicitly states that defendant made misrepresentations to plaintiff about the loan agreement "in the State [of] New Jersey." (Pl.'s Second Am. Compl. ¶ 91, ECF No. 27-1.) As a result, defendant's minimum contacts are significant enough for defendant to have reasonably anticipated defending a lawsuit over the contract in New Jersey.

IV. CONCLUSION

For the foregoing reasons, defendant's motion to dismiss is DENIED.

IT IS SO ORDERED.

DATED: February 10, 2015.

UNITED STATES DISTRICT JUDGE